## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————— )
                                                    )
HAMDA FARHAN HUSSEIN,                )
                                                    )
            Plaintiff,                          )
                                                    )
      v.                                         )        Civil Action No. 24-3201 (ABJ)
                                                    )
RENA BITTER                               )
Assistant Secretary, Bureau of Consular   )
Affairs, U.S. Department of State, *et al.*,  )
                                                    )
            Defendants.                      )
———————————————————— )

## <u>MEMORANDUM OPINION</u>

Plaintiff Hamda Farhan Hussein, a national of the Republic of Somaliland, filed a combined petition for writ of mandamus and complaint for injunctive relief against Rena Bitter, Assistant Secretary at the Bureau of Consular Affairs at the U.S. Department of State; Gwendolyn Green, Deputy Chief of Mission at the U.S. Embassy in Ethiopia; and Marco Rubio, Secretary of the U.S. Department of State. [1] *See* Pet. for Writ of Mandamus and Compl. for Inj. Relief [Dkt. # 1] ("Pet."). Plaintiff's husband filed an I-130 visa petition on her behalf in March 2022 so that she could join him in the United States, but her case has been "pending to be scheduled for an interview" at the U.S. Embassy in Ethiopia since October 2023. Pet. ¶¶ 18–22. Plaintiff claims that defendants have unreasonably delayed her application, and she asks the Court to compel them to adjudicate the visa as soon as soon as reasonably possible. Pet. at 7–9.

Defendants have moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that: (1) there is no discrete, non-discretionary

_____

[1]    Defendant Rubio is substituted automatically as a defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

duty for defendants to take; (2) scheduling a visa interview is committed to agency discretion; and (3) the allegations fail to state a claim of unreasonable delay. *See* Defs.' Mot. to Dismiss [Dkt. # 5] ("Mot.") at 5–18. Plaintiff opposed the motion, *see* Pl.'s Mem. in Opp. to Defs.' Mot. [Dkt. # 6] ("Opp."), and the matter is fully briefed. *See* Defs.' Reply in Further Support of Mot. [Dkt # 7] ("Reply"); Pl.'s Sur-Reply to Defs.' Reply [Dkt # 9] ("Sur-Reply").

While plaintiff is legitimately frustrated by the fact that she has not been interviewed yet, and the Court would urge the consulate to do so, she has not pointed to any duty to complete an interview on any particular schedule. The case turns on the delay in adjudicating her visa application, and the case law that governs that question does not support a finding in plaintiff's favor at this time. Therefore, for the reasons set forth below, the Court will **GRANT** defendants' motion to dismiss.

## BACKGROUND

On March 29, 2022, plaintiff's husband, Ahmed Jama Hassan, filed a petition on plaintiff's behalf with the United States Citizenship and Immigration Services ("USCIS") for an I-130 spousal visa. Pet. ¶¶ 18, 20. Hassan is a citizen of the United States, plaintiff is a citizen of the Republic of Somaliland, and the couple have two children who are U.S. citizens but live with her in Somalia. Pet. ¶¶ 8, 18.

On May 15, 2023, USCIS approved the petition and forwarded it to the National Visa Center ("NVC"). Pet. ¶¶ 19, 21. On October 24, 2023, the NVC notified plaintiff that all necessary documents had been submitted, and that her application was pending to be scheduled for an interview at the U.S. Embassy or Consulate General in Ethiopia. Pet. ¶ 22; Ex. 1 to Sur-Reply [Dkt. # 8-2] ("Ex. 1").

On October 18, 2024, plaintiff's counsel asked the NVC to expedite her case due to her worsening medical condition, Pet. ¶ 23, which includes deteriorating vision and frequent headaches. Pet. ¶ 8; Ex. A to Pet. [Dkt. # 1-3]. On October 22, the NVC responded:

> We sent your request to the U.S. Embassy or Consulate in ETHIOPIA. However, they cannot expedite this case. Please note: Only the U.S. Embassy or Consulate can approve or deny expedite requests. This case is now documentarily complete. That means the National Visa Center has all the required documents. Your application is now waiting for an interview appointment. The U.S. Embassy or Consulate provides the NVC with a list of available appointment dates and times. We schedule appointments on a first-in, first-out basis. After your appointment is scheduled, we will forward your case to the U.S. Embassy or Consulate General. We cannot predict how long it will take to schedule your appointment, but we will notify the applicant, petitioner, and your attorney (if appliable) when an appointment is scheduled.

Ex. B to Compl. [Dkt. # 1-4] ("Ex. B") at 1–2. As of this date, the State Department Consular Electronic Application Center ("CEAC") still indicates that plaintiff's case is at the NVC and is awaiting interview scheduling at the U.S. Embassy in Ethiopia. *See* Pet. ¶¶ 23–24.

On November 13, 2024, plaintiff filed the complaint in this action with two claims for relief. *See* Pet. Count One alleges that defendants' failure to adjudicate plaintiff's visa application within a reasonable time constitutes violation of section 706(1) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1). Pet. 7–8. Count Two alleges a claim under the Mandamus Act, 28 U.S.C. § 1361, that defendants have failed to carry out their "nondiscretionary duty" under the APA and the Immigration Nationality Act ("INA"), 8 U.S.C. § 1202 *et seq.*, to adjudicate plaintiff's application "within a reasonable time." Pet. 8–9. Plaintiff seeks an order "[m]andating" that defendants adjudicate plaintiff's visa application within fifteen days or as soon as reasonably possible. Pet. ¶ 26.

**STANDARD OF REVIEW**

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (rule 12(b)(6) case).

**I.      Subject Matter Jurisdiction**

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. C o. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint."

*Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## II.     Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678–79, citing *Twombly*, 550 U.S. at 555–56.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint "liberally in the plaintiff's favor," and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), citing *Schuler*, 617 F.2d at 608. Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.* In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

Defendants have moved to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim, arguing that: (1) plaintiff has not identified a discrete, non-discretionary duty that defendants have failed to perform; (2) "the scheduling of visa interviews is an activity committed to agency discretion;[2] and (3) the allegations fail to satisfy the test for an unreasonable delay. Mot. at 5–26. Because the Court finds that plaintiff's allegations fail to show an

---

[2]    The defendants argue that the "complaint fails" because "the scheduling of visa interviews is an activity committed to agency discretion," Mot. at 13–14, but defendants' reply characterizes this argument as a jurisdictional issue. *See* Reply at 6 ("[T]he Court should dismiss [p]laintiff's [c]omplaint for lack of subject matter jurisdiction."). The D.C. Circuit has clarified "that whether a complaint has sought 'review of agency action committed to agency discretion by law' goes to failure to state a claim 'under Rule 12(b)(6), not . . . the jurisdictional provision of Rule 12(b)(1).'" *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 88 n.6 (D.D.C. 2022), quoting *Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011); *Jackson*, 648 F.3d at 854 ("[W]e conclude that a complaint seeking review of agency action 'committed to agency discretion by law' . . . has failed to state a claim under the APA . . . ."). So the Court will treat this argument as an attack on the complaint under Rule 12(b)(6).

unreasonable delay, it will not consider defendants' additional arguments, and the complaint will

be dismissed on that ground.[3]

### I.    Plaintiff has failed to allege unreasonable delay.

Plaintiff's APA claim alleges the government's delay in adjudicating her visa application

violates section 706(1) of the statute, *see* Pet. at 7–8, and her Mandamus Act claim alleges that

defendants have failed to carry out its non-discretionary duty to adjudicate plaintiff's application

"within a reasonable time."  Pet. at 8–9.

The APA requires that agencies, "within a reasonable time . . . shall proceed to conclude a

matter presented to it."  5 U.S.C § 555(b).  If they fail to do so, the APA authorizes courts to

"compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C § 706(1).

Under the Mandamus Act, a court can issue a writ of mandamus only if the plaintiff

demonstrates:  "(1) a clear and indisputable right to relief, (2) that the government agency or

official is violating a clear duty to act, and (3) that no adequate alternative remedy exists."  *Am.*

*Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).  A writ of mandamus is only issued

"where the duty to be performed is ministerial and the obligation to act peremptory, and clearly

---

3       Defendants also argue that plaintiff's failure to identify a non-discretionary duty is both a
defect with the complaint and a jurisdictional defect.  *Compare* Mot. at 5 ("Plaintiff has failed to
state a claim upon which relief may be granted.") *with* Reply at 4  ("[T]he Court should dismiss
[the] [c]omplaint for lack of subject matter jurisdiction.").  At least one court in this district has
"assume[d], without deciding," that there is a "mandatory non-discretionary agency action in the
form of the statutory requirement that '[a]ll immigrant visa applications shall be reviewed and
adjudicated by a consular officer.'"  *See Khan v. Bitter*, Civ. Action No. 23-1576 (BAH), 2024
WL 756643, at *3 n.1 (D.D.C. Feb. 23, 2024), quoting 8 U.S.C. § 1202(b).  Others have declined
to address the argument all together because the complaint failed to state an unreasonable delay
anyway.  *See, e.g.*, *Zandieh v. Pompeo*, Civ. Action No. 20-919 (JEB), 2020 WL 4346915, at *4
(D.D.C. July 29, 2020) (explaining that the court "need not decide whether plaintiffs' claims are
reviewable" because it already found that "the delay asserted [was] not unreasonable").  Because
this case similar involves a complaint that has failed to state an unreasonable delay, and it will fail
for that reason, the Court will also decline to address the duty argument.

defined.  The law must not only authorize the demanded action, but require it."  *13th Reg'l Corp. v. U.S. Dep't of Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980) (internal citations and quotations omitted).  When a plaintiff seeks mandamus relief, the court "starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act."  *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000).

The standard by which the Court reviews the timeliness of agency action is the same under both section 706(1) of the APA, and the Mandamus Act.  *Bhagerian v. Pompeo*, 442 F. Supp. 3d 87, 96 (D.D.C. 2020), citing *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017) (internal quotation marks omitted).  The court must look to whether "the agency has unreasonably delayed the contemplated action," *In re Core Commc'ns*, 531 F.3d 849, 855 (D.C. Cir. 2008) (internal quotation marks omitted), but "[t]here is no *per se* rule as to how long is too long to wait." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (quotation marks and citation omitted).

In the D.C. Circuit, courts analyze unreasonable delay claims under six factors outlined in *Telecomms. Rsch & Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id*. at 80 (internal citations omitted).  The Court of Appeals has cautioned that the reasonableness of a delay "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but [it] will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available."  *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003).  Courts should take into account "the importance of 'competing priorities' in assessing the reasonableness of an administrative delay."  *Id.* at 1100, quoting *In re Barr Lab'ys., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991).

### A.  *TRAC* Factors 1 and 2

The first two of the TRAC factors favor the government.  These factors are "typically considered together," *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020), and concern whether the alleged delay comports with a "rule of reason," which can be determined by a congressionally provided "timetable or other indication of the speed with which it expects the agency to proceed."  *TRAC*, 750 F.2d at 80.

Plaintiff argues that 8 U.S.C. § 1571(b) should carry weight in the Court's determination of these factors.  Opp. at 32.  That section states that "the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b).  But the language of that section is "aspirational," rather than mandatory, *Da Costa v. Immigr. Invest. Program Off.*, 80 F.4th 330, 344 (D.C. Cir. 2023), and "[t]o the contrary, Congress has given the agencies wide discretion in the area of immigration processing."  *Skalka* 246 F. Supp. 3d at 153–54.  Moreover, plaintiff admits that "there is no statutory or regulatory

time frame for which the State Department or U.S. Embassy must schedule an interview for an applicant."  Opp. at 30.

In the absence of any congressionally mandated schedule, the Court must compare the length of the delay in this case to the amount of time that courts have found to be unreasonable in other cases. *See Bagherian*, 442 F. Supp. 3d at 95 (following this approach when there was no congressionally imposed timeline for purposes of the first two factors); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C. 2020) (same).

The NVC informed plaintiff that her case was "documentarily qualified" on October 24, 2023, Pet.  ¶ 22, and it has now been approximately twenty-one months since that date.  While the Court does not wish to minimize the burden this delay has imposed on the plaintiff, other courts have found that similar or longer delays did not support a claim of unreasonable delay.  *See Bhagerian*, 442 F. Supp. 3d at 96 (twenty-five month delay was not unreasonable); *Didban*, 435 F. Supp. 3d at 176 (two-year delay was not unreasonable); *Skalka*, 246 F. Supp. 3d at 153–54 (noting that a two-year delay in processing an immigration visa "does not typically require judicial intervention"); *Yavari v. Pompeo*, Civ. Action No. 19-2524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) ("District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable.").  Therefore, the first two *TRAC* factors weigh in favor of defendants.

## B.  *TRAC* Factors 3 and 5

The third and fifth factors weigh in plaintiff's favor.  These factors consider whether "health and welfare are at stake," and the "the nature and extent of the interests prejudiced by delay."  *TRAC*, 750 F.2d at 80.  Plaintiff's allegations make clear that it is emotionally, physically, and financially difficult to be separated from her husband.  Although plaintiff and her husband

have been married since 2019 and have two children together, the family has not been able to live together in the United States because of plaintiff's pending visa application. Pet. ¶ 8. Plaintiff herself has suffered several health challenges, including frequent headaches and deteriorating vision, that make it difficult for her to handle her two children alone. Pet. ¶¶ 8–9. And because plaintiff's visa application has been delayed, her husband has spent approximately $100,000 on yearly trips to Somalia, where he spends an average of three months with them at a time. Pet. ¶ 9.

Plaintiff's interest in receiving a decision on her application is undeniably significant, and the delay has caused her and her family substantial hardship. Therefore, these factors weigh in favor plaintiff.

### C. *TRAC* Factor 4

The fourth *TRAC* factor cuts in favor of defendants. The fourth factor looks at "the effect of expediting delayed action on agency activities of a higher or competing priority," *TRAC*, 750 F.2d at 80, and it carries "the greatest weight in many cases." *Milligan*, F. Supp. 3d at 319.

Courts generally defer to the agency's "unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *Barr Lab'ys*, 930 F.2d at 72, 76 (D.C. Cir. 1991); *see In re Monroe Commc'ns. Corp.*, 840 F.2d 942, 946 (D.C. Cir. 1988) (courts "must give agencies great latitude in determining their agendas"). And the D.C. Circuit has declined "to grant relief, even though all the other factors considered in *TRAC* favored it, where 'a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain.'" *Mashpee*, 336 F.3d at 1100 (brackets omitted), quoting *Barr Lab'ys.*, 930 F.2d at 75; *see also Burwell*, 812 F.3d at 192 (explaining that "precedent forecloses" mandamus relief "that would have had the effect of

allowing the plaintiffs to jump the line, functionally solving their delay problem at the expense of other similarly situated applicants").

Although plaintiff argues that "[she] does not request this Court to prioritize her visa application over others," Opp. at 33, she is asking the Court to order defendants to process her visa within fifteen days, or as soon as reasonably possible. Pet. ¶ 26. So while it may not be her intent to "jump the line," that would be the effect of her requested relief. Therefore, this factor weighs against plaintiff.

### D.  *TRAC* Factor 6

Finally, the sixth factor does not weigh heavily in the Court's analysis. This factor tells the Court "that it need not find any impropriety behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80. Although plaintiff "question[s] why [d]efendants have failed to schedule her consular interview," she does not allege that defendants have acted with impropriety in this case. Opp. at 36. Other courts in this district have concluded that the absence of bad faith allegations weighs in favor of the government, *see, e.g.*, *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. Jan. 16, 2021), but given its assessment that the majority of the other *TRAC* factors weigh in favor of defendants, the Court need not rely upon this largely neutral factor.

### CONCLUSION

In sum, the balance of all of the factors weighs in favor of defendants, and although plaintiff has many reasons to be frustrated, she has not stated a claim under either the APA or the Mandamus Act. Therefore, the motion to dismiss [Dkt. # 5] will be **GRANTED**, and the complaint will be **DISMISSED**. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  June 26, 2025